# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | | |
| MARY KALRA | * | Chapter 11 |
| BALBIR KALRA | | Case No.:09-21284 |
| | * | |
| Debtors-in-Possession | | |

\*    \*    \*    \*    \*    \*    \*    \*

## SECOND DEBTORS' AMENDED PLAN OF REORGANIZATION

_____Mary and Balbir Kalra, the Debtors and Debtors-in-Possession (the "Debtors"), herein, by

and through undersigned counsel, hereby proposes the following Second Amended Plan of

Reorganization (the "Plan") pursuant to § 1121(c) of the United States Bankruptcy Code.

## ARTICLE 1
## DEFINITIONS

All terms used in this Plan shall have the respective meanings hereinafter set forth.  Any

capitalized term used in this Plan that is not defined in this Plan or in the Disclosure Statement,

but is defined in the Bankruptcy Code shall have the meaning set forth in the Bankruptcy Code.

Proper names are defined within the Plan and Disclosure Statement and are not included in this

Article.

1.1    <u>Administrative Claim(s)</u>:  all administrative expenses of the Debtor's Chapter 11

case entitled to priority under §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including,

without limitation, all actual and necessary costs and expenses of preserving the Debtor's estate

and operating the Debtor's business from and after the Petition Date to and including the

Confirmation Date, all allowances of compensation and reimbursement approved by the

Bankruptcy Court in accordance with the Bankruptcy Code, and any fees or charges assessed

against the Debtor-in-Possession's estate under 28 U.S.C. § 1930.

      1.2    <u>Allowed Amount</u>:

      (a)    the amount of a Claim that is listed in the Debtor-in-Possession's Schedules as not disputed, contingent, or unliquidated if the holder of such Claim has not filed a proof of Claim prior to the Bar Date; or

      (b)    if a holder has filed a timely proof of claim: (I) the amount stated in such Proof of Claim (reduced by the amount of any payments made by the Debtor pursuant to Court Order); or (ii) if an objection to such Claim is filed, the amount shall be fixed by Final Order of the Bankruptcy Court, or by agreement of the Debtor.

      1.3    <u>Allowed Claim</u>: a Claim, the amount of which has become or is an Allowed Amount.

      1.4    <u>Allowed Secured Claim</u>: a Claim, the amount of which has become an Allowed Amount by Final Order of the Bankruptcy Court fixing the value of the collateral securing the Claim.

      1.5    <u>Bankruptcy Code</u>: Title 11 U.S.C. § 101 *et. seq.*, as amended from time to time.

      1.6    <u>Bankruptcy Court</u>: the United States Bankruptcy Court for the District of Maryland, Greenbelt Division.

      1.7    <u>Bankruptcy Rules</u>: the Federal Rules of Bankruptcy Procedure promulgated August 1, 1991, or as more recently amended.

      1.8    <u>Bar Date</u>: the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) as the date by which Claims which must be filed.

      1.9    <u>Cash Distributions</u>: the cash payments from Cash Flow to Classes of Claims entitled to payment under the terms of the Plan.

      1.10    <u>Cash Flow</u>: all Revenues generated by the continued operations of the Debtor's real estate business and any cash infusions from the Debtor's shareholders or other investors.

1.11   Chapter 11 Case: the Chapter 11 case of Mary and Balbir Kalra case no.: 09-21284-TJC, pending in the Bankruptcy Court.

1.12   Claim:

(a)  a right to payment, whether or not such right is reduced to a judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal, equitable, secured or unsecured; or,

(b)  a right to an equitable remedy for breach of performance of an agreement, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

1.13   Claimant:  an entity holding or having a Claim.

1.14   Claims Distribution Fund: the account for Cash Distributions maintained by the Debtor and funded by all Cash Flow of the Debtor existing or realized after the Confirmation Date.

1.15   Class: a Claim or Interest, or a group of Claims or Interests consisting of those Claims or Interests which are substantially similar to each other, as classified under the Plan, or a Claim or Interest, or a group of Claims or Interests which are otherwise required to be separately classified.

1.16   Confirmation Date:  the date the Confirmation Order becomes a Final Order.

1.17   Confirmation Order:  an order entered by the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.18   Creditor: any entity which holds a Claim against the Debtor.

1.19   Debt: any liability on a Claim.

1.20   Debtors: Mary and Balbir Kalra, the debtors and debtors-in-possession, herein.

1.21   Deficiency Claim: a Claim arising from any Outstanding Debt owed by the Debt

3

which exceeds any Allowed Secured Claim of any secured creditor, if any.

   1.22 <u>Disallowed Amount</u>: for any particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Disputed Claim and the Allowed Amount thereof.

   1.23 <u>Disputed Claim</u>:  any Claim for which an Allowed Amount has not yet been determined and, with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Bankruptcy Court or as otherwise set forth in the Plan.

   1.24 <u>Disputed Claims Procedure</u>: the procedure applicable to any Disputed Claim under the Plan or any Claim against which an objection may be filed, which procedure shall require the retention of Cash Distributions by the Debtor in the Claims Distribution Fund adequate in amount necessary to satisfy such Disputed Claim or Disputed Claims to the extent of available Cash Flow.

   1.25 <u>Effective Date</u>:  the thirtieth (30th) business day after the date on which the Confirmation Order becomes a Final Order, or if an appeal from the Confirmation Order is timely filed, the first business day on which implementation of the Plan has not been stayed pending such an appeal.

   1.26 <u>Equity Interest Holder</u>: the interests of then shareholders of the Debtor as of the Petition Date.

   1.27 <u>Face Amount</u>: for any particular Claim:

     (a) if the holder of such claim has not filed a proof of claim with the Bankruptcy Court by the Bar Date, the amount, if any, for which such claim is listed in the Schedules as fixed, undisputed, noncontingent and liquidated; or

(b)    if the holder of such Claim has filed a Proof of Claim with the Bankruptcy Court by the Bar Date, the amount stated in such proof of claim; or

(c)    with respect to Administrative Claim in the form of an application for allowance of compensation or reimbursement of expenses of Professional Persons filed and pending in the Bankruptcy Court, the net amount to which such professional would be entitled if his or her application were to be granted in full.

1.28    Final Order:  an order of the Bankruptcy Court, the time for appeal from which has expired and from which no appeal was timely filed or from which any appeal has been finally determined or dismissed, and the effectiveness of which has not been stayed.

1.29    General Unsecured Claim:  any unsecured Claim against the Debtors arising prior to the Petition Date that is not entitled to priority pursuant to the Bankruptcy Code.

1.30    Impaired:  when used with respect to a Class, it means that the legal, equitable or contractual rights attached to the Claims or Interests of that Class are modified, other than by curing defaults and reinstating maturities or by payment in full, in cash on the Effective Date.

1.31    Interests:  the Equity Interests in the Debtor as of the Petition Date.

1.32    Interest Holder: an Equity Interest Holder.

1.33    Outstanding Debt: the Allowed Amount owed by the Debtor to any secured creditor.

1.34    Petition:  the Debtors' voluntary petition under Chapter 11 of the Bankruptcy Code.

1.35    Petition Date: June 22, 2009, which is the date the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

1.36    Plan:  this Debtors' Second Amended Plan of Reorganization in its present form or as it may hereafter be amended or modified.

1.37    Priority Status: the priority in distribution which is afforded to certain Claims against the Debtor pursuant to § 507(a) of the Bankruptcy Code.

1.38    Professional Persons: persons retained or to be retained pursuant to §§ 327, 328, 330, 331, and 503(b) of the Bankruptcy Code.

1.39    Pro Rata: shall mean

(a)    the same proportion that the Allowed Amount of a Claim bears to the aggregate of:

(I) the Allowed Amount of all Claims of that particular Class of Claims; plus

(ii) the aggregate face amounts of all Disputed Claims as at the Confirmation Date for a particular Class of Claims, as reduced from time to time as and to the extent the amounts of such Disputed Claims are determined; and

(b)    with respect to Disputed Claims, the same proportion of that the Face Amount of a Disputed Claim of a creditor in any Class bears to the aggregate of:

(i) the Disputed Amount of all Claims of the particular Class of Claims or other classes of Claims if applicable; plus

(ii) the aggregate Face Amount of all Claims which are subject to dispute as of the Confirmation Date of that particular Class of Claims or other Classes of Claims if applicable, as reduced from time to time as and to the extent that the Disallowed Amount of such Claims is determined

1.40    Revenues: all income derived from the sale of Debtors' assets, loans received by Debtors' property interests, rental income of Debtors' properties, and income generated by the continued operation of Debtors' business.

1.41    Schedules: the assets and liabilities, as may be amended, filed by the Debtors with the Bankruptcy Court in the Chapter 11 Case.  Such Schedules may be amended by the Debtors through thirty (30) days following the Effective Date.

1.42   <u>Secured Claim</u>: the holder of an Outstanding Debt and an Allowed Secured Claim.

1.43   <u>U.S. Trustee</u>: the Office of the United States Trustee in Greenbelt, Maryland.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS**

1.      The Class 1 Claim shall consist of the Allowed Secured Claim of Countrywide/ Bank of America ("BAC")in the approximate amount of five hundred nine thousand dollars ($509,000.00).  This claim is secured by the Debtors' Residence.  There was a pre-petition arrearage and post-petition arrearage.  The Class One Claim is undersecured as the current value of the Residence is four hundred seventy-five thousand dollars ($475,000.00).  The Class One Claim in Impaired.

2.      The Class Two claim shall consist of the Allowed Claim of Krishan Gupta in the approximate amount of twenty-five thousand dollars ($25,000.00), which is secured by the Residence.  Based upon the value of the Residence and the higher priority lien of Countrywide, the Class Two Claim is unsecured.  The Class Two Claim is Impaired.

3.      The Class Three Claim of shall consist of the Allowed Secured Claim of American Home Mortgage in the approximate amount of three hundred thirty-four thousand fifty-six dollars and twenty-nine cents ($334,056.29).  The Class 3 Claim is secured by the 2313 Glenmore Terrace property, which has an approximate value of four hundred fifty thousand dollars ($450,000.00).  There was a pre-petition arrearage.  The Debtors have made all required post-petition payments.  The Class Three Claim is Impaired.

4.      The Class Four Claim shall consist of the allowed Secured Claim of Wachovia Bank in the approximate amount one hundred six thousand one hundred eighty-one dollars and

7

ninety-one cents ($106,181.91), which is secured by a second priority deed of trust on the real property and improvements located at 2313 Glenmore Terrace, Rockville, Maryland, which has an approximate value of four hundred thirty-five thousand dollars ($435,000.00). There was a pre-petition arrearage of approximately two hundred forty-nine thousand dollars and twenty-two cents ($249.22). The Debtors have made all required post-petition payments. The Class Four Claim is Impaired.

5.      The Class Five Claim shall consist of the Allowed Secured Claim of Krishan Gupta in the approximate amount of twenty-five thousand dollars ($25,000.00), which is allegedly secured by a third priority deed of trust on the real property and improvements located at 2313 Glenmore Terrace, Rockville, Maryland. Based upon the value of the real property and improvements located at 2313 Glenmore Terrace, Rockville, Maryland, the Class Five Claim is unsecured. The Class Five Claim is Impaired.

6.      The Class Six Claim shall consist of the Allowed Claim of the Rockshire Association in the amount of one thousand four hundred sixty-seven dollars ($1,467.00). The Class Six Claim is based upon a lien filed for unpaid home owners association dues for the real property and improvements located at 2313 Glenmore Terrace, Rockville, Maryland. Prior to the filing, the Class 6 Claim filed a lien for these amounts. However, based upon the value of the 2313 Glenmore Terrace, Rockville, Maryland and the liens having priority over the Class Six Claim, the Class Six Claim is unsecured. The Class Six Claim is Impaired.

7.      The Class Seven Claim shall consist of the Allowed Secured Claim of Countrywide/BAC in the approximate amount of three hundred ninety-one thousand five hundred dollars ($391,500.00), which is secured by the Fort Lee Property. The Fort Lee Property

8

has an approximate value of two hundred eighty-five thousand dollars ($285,000.00), and therefore, the Class Seven Claim is undersecured.  There was a pre-petition arrearage to the Class Seven Claim.  The Debtors have made the required post-petition payments.  The Class Seven Claim is Impaired.

8.      The Class Eight Claim shall consist of the Allowed Secured Claim of Shore Bank in the approximate amount of eighty-two thousand dollars ($82,000.00), which is secured by the Hortown property.  The Hortown property has an estimated value of eighty-five thousand dollars ($85,000.00).  Prior to the Petition Date, the Debtors and the Class Eight Claim modified the terms of the note and the Debtors have been making monthly payments of two hundred eighty-five dollars and fifty-six cents ($285.56).  Ths Class Eight Claim is Impaired.

9.      The Class Nine Claim shall consist of the Allowed Secured Claim of America's Servicing Co. in the approximate amount of two hundred twenty-five thousand three hundred sixteen dollars ($225,316.00), which is secured by the Water Mill property.  The Water Mill property has an estimated value of three hundred fifteen thousand dollars ($315,000.00). There was a pre-petition arrearage of approximately eleven thousand two hundred ninety-six dollars ($11,296.00).  The Debtors have made all necessary post-petition payments.  The Class Nine Claim is Impaired.

10.     The Class Ten Claim shall consist of the Allowed Secured Claim of BAC/Countrywide Home Loans in the approximate amount of one hundred forty-five thousand six hundred sixteen dollars and fifty-nine cents ($145,616.59), which is secured by a second priority deed of trust on the Water Mill property.  Based upon the value of the Water Mill property, the Class Ten Claim is undersecured.  There was a pre-petition arrearage of

approximately five thousand six hundred fifty-eight dollars and fifty-nine cents ($5,658.59) to the Class 10 Claim. Mr. Kalra has made all of the necessary post-petition payments. The Class Ten Claim is Impaired.

11.    The Class Eleven Claim shall consist of the Allowed Secured Claim of American Home Mortgage in the approximate amount of two hundred seventy-six thousand three hundred seventy-three dollars ($276,373.00), which is secured by the East Chester property. This property has an approximate value of three hundred thousand dollars ($305,000.00). There was a pre-petition arrearage. The Debtors have made all necessary post-petition payments. The Class Eleven Claim is Impaired.

12.    The Class Twelve Claim shall consist of the Allowed Secured Claim of American Home Mortgage in the approximate amount of two hundred eighty-seven thousand seven hundred forty-eight dollars and seventy-five cents ($287,748.75), which is secured by the Sunrise Court property. The Sunrise Court property has an estimated value of three hundred fifty thousand dollars ($350,000.00). The Debtors have made the necessary post-petition payments. The Class Twelve Claim is Impaired.

13.    The Class Thirteen Claim shall consist of the Allowed Secured Claim of the Bethany Shore Condominium Association in the approximate amount of five thousand two hundred twenty-five dollars and seventy-two cents ($5,225.72). This claim is based upon a pre-petition lien filing for unpaid condominium assessments and is secured by the Sunrise Court Property. The Class 13 Claim is Not Impaired.

14.    The Class Fourteen Claim shall consist of the Allowed Secured Claim of Countrywide/BAC in the approximate amount of two hundred four thousand six hundred ninety-

two dollars and thirty-five cents ($204,692.35), which is secured by the Doc's Place Property. This property has an estimate value of two hundred forty-five thousand dollars ($245,000.00). There was a pre-petition arrearage of approximately two thousand nine hundred sixteen dollars and seventy-five cents ($2,916.75). Mr. Kalra has made the necessary post-petition payments. The Class Fourteen Claim is Impaired.

15.     The Class Fifteen Claim shall consist of the Allowed Secured Claim of Countrywide/BAC  in the approximate amount of two hundred forty-six thousand dollars ($246,000.00), which is secured by a first priority lien against the Brighten Street Property.  The value of the Brighten Street Property is approximately two hundred forty-five thousand dollars ($245,000.00).  There was a pre-petition arrearage.  Additionally, there is a post-petition arrearage.   The Class Fifteen Claim is Impaired.

16.     The Class Sixteen Claim shall consist of the Allowed Secured Claim of American Home Mortgage in the approximate amount of fifty-five thousand two hundred seventy-three dollars and fifty-five cents ($55,273.55), which is secured by a second priority lien on the Brighten Street Property.  There was a pre-petition arrearage of three thousand one hundred ninety-six dollars and twenty-four cents ($3,196.24).  Based upon the value of the Brighten Street Property and the value of the superior lien, the Class Sixteen Claim is unsecured.  The Class Sixteen Claim is Impaired.

17.     The Class Seventeen Claim shall consist of the Allowed Secured Claim of Avon Park Home Owner's Association in the approximate amount of one thousand one hundred seventeen dollars and fifty-seven cents ($1,017.57).  Based upon the value of the Brighten Street Property and the value of the superior lien, the Class Seventeen Claim is unsecured.  The Class

Seventeen Claim is Impaired.

18.    <u>Class Eighteen:</u> The Class Eighteen Claim shall consist of the Allowed Secured Claim of Countrywide/BAC  in the approximate amount of three hundred two thousand five hundred seven dollars and sixty-seven cents ($302,507.67), which is secured by the Oliver Drive Property.  The Oliver Drive Property has a value of approximately two hundred forty-five thousand dollars ($245,000.00), and therefore, the Class Eighteen Claim is under secured.  There was a pre-petition arrearage of nineteen thousand two hundred eighty-three dollars and twenty-six cents ($19,283.26).  Additionally, there is a post-petition arrearage. The Class Eighteen Claim is Impaired.

19.    The Class Nineteen Claim shall consist of the Allowed Secured Claim of Countrywide/BAC  in the approximate amount of four hundred thirty-four thousand four hundred eighty-six dollars ($434,486.59), which is secured by the Lord Baltimore Property.  The Lord Baltimore Property has an approximate value of four hundred seventy-five thousand dollars ($475,000.00).  There was a pre-petition arrearage of thirty-three thousand three hundred forty-two dollars and fourteen cents ($33,342.14).  There is also a post-petition arrearage.  The Class Nineteen Claim is Impaired.

20.    The Class Twenty Claim shall consist of the Allowed Secured Claim of the Lord Baltimore Landing Home Owner's Association in the approximate of two thousand sixty-four dollars and eighty-eight cents ($2,064.88).  This is based upon the filing of a lien for unpaid home owner association dues.  The Class Twenty Claim is not Impaired.

21.    The Class Twenty-one Claim shall consist of the Allowed Secured Claim of American Home Mortgage in the approximate amount of one hundred eighty-eight thousand

seven hundred sixty-three dollars and seventy-five cents ($188,763.75), which is secured by a lien on the Pine Run Property. The Pine Run Property has an approximate value of one hundred seventy-five thousand dollars ($175,000.00). There was a pre-petition arrearage of eight thousand four hundred ninety-four dollars and sixty-two cents ($8,494.62). Mr. Kalra has made the necessary post-petition payments. The Class Twenty-one Claim is Impaired.

22.    The Class Twenty Claim shall consist of the Allowed Secured Claim of Countrywide in the approximate amount of one hundred ninety-five thousand five hundred sixty-one dollars ($195,561.00), which is secured by a first priority lien on the 4119 Captain's Corridor Property. This property has an approximate value of one hundred seventy-five thousand dollars ($175,000.00) and therefore, the Class Twenty-two Claim is under secured. There was a pre-petition arrearage. Mr. Kalra has made the necessary post-petition payments. The Class Twenty-two Claim is Impaired.

23.    The Class Twenty-on Claim shall consist of the Allowed Secured Claim of Countrywide/BAC in the approximate amount of twenty-three thousand one hundred seventy-two dollars and thirty-nine cents ($23,172.39), which is secured by a second priority lien on the 4119 Captain Corridor Property. The 4119 Captain Corridor Property has an approximate value of one hundred seventy-five thousand dollars ($175,000.00). There was a pre-petition arrearage of approximately six hundred one dollars and sixty-two cents ($601.62). Given the value of the 4119 Captain Corridor Property and the amount of the senior lien, the Class Twenty-three Claim is unsecured. The Class Twenty-three Claim is Impaired.

24.    The Class Twenty-two Claim shall consist of the Allowed Secured Claim of Countrywide in the approximate amount of three hundred seventy-five thousand five hundred

sixty-five dollars and twenty-four cents ($375,565.24), which is secured by the Janice Court Property. The Janice Court Property has an approximate value of four hundred seventy-five thousand dollars ($475,000.00). There was a pre-petition arrearage to the Class 22 Claim of approximately sixteen thousand two hundred thirty-seven dollars and forty-five cents ($16,237.45). The Debtors have made the necessary post-petition payments. The Class Twenty-four Claim is Impaired.

25. The Class Twenty-five Claim shall consist of the Allowed Secured Claim of Bank of America in the approximate amount of two hundred ninety-nine thousand dollars ($299,000.00), which is secured by a first priority lien on the Carter Lane Property. The Carter Lane Property has an estimated value of two hundred eighty-five thousand dollars ($285,000.00) and therefore, the Class Twenty-three Claim is under secured. There was a pre-petition arrearage and there is also a post-petition arrearage.

26. The Class Twenty-four claim shall consist of the Allowed Secured Claim of EMC Mortgage in the approximate amount of thirty-seven thousand sixty-one dollars and nineteen cents ($37,061.19), which is secured by a second priority lien on the Carter Lane Property. There was a pre-petition arrearage of two thousand six hundred twenty-nine dollars and nineteen cents ($37,061.19). The Carter Lane Property has an approximate value of two hundred eighty-five thousand dollars ($285,000.00). Given the value of the Carter Lane Property and the amount of the superior lien, the Class Twenty-four Claim is Unsecured. The Class Twenty-six Claim is Impaired.

27. The Class Twenty-seven claim shall consist of the Allowed Secured Claim of GMAC in the approximate two hundred thirteen thousand five hundred seventeen dollars and

14

sixty-one cents ($213,517.61), which is secured by the 4170 Captains Corridor Property. This property has an approximate value of one hundred seventy-five thousand dollars ($175,000.00). Based upon the valuation of property, the Class Twenty-seven claim is under secured. The Class Twenty-seven Claim is Impaired.

28.    The Class Twenty-eight Claim shall consist of the Allowed Secured Claim of GMAC in the approximate amount of twenty-five thousand four hundred dollars ($25,400.00), which is secured by a second priority lien on the 4170 Captain Corridor Property. There was no pre-petition arrearage. Given the value of this property and the amount of the superior lien, the Class Twenty-eight Claim is Unsecured. The Class Twenty-eight Claim is Impaired.

29.    The Class Twenty-seven Claims shall consist of the General Unsecured Claims in the approximate amount of nine hundred sixty-six thousand four hundred seventy-eight dollars ($966,478.00).[1] This Class includes any deficiency claims from the Class One through Class Twenty-eight Claims. The Debtors estimate that these Claims total approximately five hundred

---

[1] This class includes the followings claims based upon proof of claims filed by these creditors: 1) Creekside Condominium Owners, Assoc. in the amount of four thousand one hundred dollars and fifty-six cents ($4,100.56); 2) Avon Park HOA in the amount of one thousand three hundred eighty-four dollars and twenty-five cents ($1,384.25); 3) Arun Grun in the amount of two hundred ten thousand dollars ($210,000.00); 4) BB&T in the amount of one hundred two dollars and fifty-seven cents ($102.57); and 5) Lowes in the amount of three thousand one hundred seventy-two dollars and five cents ($3,172.05).

Additionally, this Class includes the following scheduled claims for which no proof of claim was filed: 1) Aspire in the amount of one hundred fifty dollars and forty-five centsd ($145.54); 2) Captain's Cove Golf & Yacht Club, Inc. in the amount of three thousand two hundred thirty-six dollars and fifty cents ($3,236.50); 3) Comcast in the approximate amount of three hundred fifty-eight dollars and thirty-seven cents ($358.37); 4) Corbin Hall HOA in the amount of one thousand four hundred twenty-four dollars 9$1,424.00); 5) Harcharan Kalra in the amount of one hundred seventy-five dollars ($175,000.00); 6) Home Depot in the amount of two thousand one hundred seven dollars and forty-one cents ($2,107.41); 7) Jarnail Pasricha in the amount of five thousand dollars ($5,000.00); 8) Lord Baltimore Landing HOA in the amount of two thousand one hundred thirty-nine dollars ($2,139.00); 9) Lowe's in the amount of two thousand four hundred thirty-five dollars and twenty-eight cents ($$2,435.28); 10) Rockshire Assoc. in the amount of four thousand five hundred thirty-five dolalrs and forty-four cents ($4,535.44); 11) Satdarshan Monya in the amount of ten thousand dollars ($10,000.00); 12) Sears in the amount of six hundred fifty-eight dollars and fifty-two cents ($658.52); 13) Sussex County, Delaware in the amount of three thousand four hundred eighty-four dollars and forty-eight cents ($3,484.48); 14) Tidewater Utilities in the amount of eight hundred nineteen dollars ($819.00); 15) Village of Southhampton in the amount of one thousand five hundred seventy-seven dollars 9$1,577.00); and 16) Virginia Propane in the amount of one thousand four hundred eighty-nine dollars and sixty-two cents ($1,489.62).

thirty-three thousand three hundred eighty dollars ($533,380.00).  Additionally, this Class of

Claims includes any deficiencies caused by the pre-petition foreclosure of the Debtors'

properties.  The amount of those Claims is presently unknown.

**ARTICLE III**
**TREATMENT OF CLAIMS UNDER THE PLAN**

 1. <u>Class One:</u> In complete, satisfaction, and discharge, Mr. Kalra will execute a new

note and deed of trust secured by the Residence (the "New 2304 Glenmore Terrace Note") in the

principal amount of four hundred seventy-five thousand dollars ($475,000.00).  The New 2304

Glenmore Terrace Note shall bear an interest rate of four and one half percent (4½%) and be

amortized over thirty (30) years.  Nothing in the New 2304 Glenmore Terrace Note shall prohibit

Mr. Kalra from pre-paying some or all of the New 2304 Glenmore Terrace Note.   Mr. Kalra

shall commence making monthly payments of two thousand four hundred six dollars and

seventy-six cents ($2,406.76) on the Effective Date.  Mr. Kalra shall continue to make monthly

payments to the Class One Claim pursuant to the New 2304 Glenmore Terrace Note until the

New 2304 Glenmore Terrace Note is paid in full.  Upon payment in full of the New 2304

Glenmore Terrace Note, the Class One Claim shall release its lien against the real property and

improvements located at 2304 Glenmore Terrace, Rockville, Maryland.

 All amount over the principal amount of the New 2304 Glenmore Note shall be treated as

a deficiency claim and accorded the treatment of a General Unsecured Claim in Class Twenty-

nine.   The Debtors understand that the Class One Claim must agree to its treatment under the

Plan.  Should the Class One Claim not accept a reduction in the amount of its Claim, Mr. Kalra

will surrender the Residence to the Class One Claim.  Any deficiency after the surrender of the

Residence shall be treated as a General Unsecured Claim in Class Twenty-nine.

16

2.      Class Two: In complete satisfaction, discharge, and release, the Class Two Claim shall be treated as a General Unsecured Claim and accorded the treatment of a General Unsecured Claim in Class Twenty-nine.   Upon substantial completion of the Plan as evidenced by this Chapter 11 case being administratively closed, the Class Two Claim shall release its lien against the Residence.

3.      Class Three: In complete discharge, satisfaction, and release, on the Effective Date, the Debtors shall execute a new note (the "New 2313 Glenmore Terrace Note") and deed of trust with the principal amount of three hundred thirty-four thousand fifty-six dollars and twenty-nine cents ($334,056.29).  The  New 2313 Glenmore Terrace Note shall bear an interest rate of four and one half percent (4½%) and be amortized over thirty (30) years.  The New 2313 Glenmore Terrace Note shall contain other commercially reasonable terms.  However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying some or all of the New 2313 Glenmore Terrace Note.   The Debtors shall commence making monthly payments of one thousand six hundred ninety-two dollars and sixty-one cents ($1,692.61) on the Effective Date. The Debtors shall continue to make monthly payments to the Class Three Claim pursuant to the New 2313 Glenmore Terrace Note until the New 2313 Glenmore Terrace Note is paid in full. Upon payment in full of the New 2313 Glenmore Terrace Note the Class Three Claim shall release its lien against the real property and improvements located at 2313 Glenmore Terrace, Rockville, Maryland.

4.      Class Four: In complete satisfaction, discharge, and release on the Effective Date, the Debtors shall execute a new note to the Class Four Claim (the "New Wachovia Note") in the approximate principal amount of one hundred six thousand one hundred eighty-one dollars and

ninety-one cents ($106,181.91). The New Wachovia Note shall bear an interest rate of four and

one-half percent (4½%) and be amortized over thirty (30) years. The New Wachovia Note shall

contain other commercially reasonable terms. However, nothing in the new note of deed of trust

shall prohibit the Debtors from pre-paying some or all of the New Wachovia Note. The Debtors

shall commence making monthly payments of five hundred thirty-eight dollars and one cents

($538.001) on the Effective Date. The Debtors shall continue to make monthly payments to the

Class Four Claim pursuant to the New Wachovia Note until the New Wachovia Note is paid in

full. Upon payment in full of the New Wachovia Note the Class Four Claim shall release its lien

against the real property and improvements located at 2313 Glenmore Terrace, Rockville,

Maryland.

     5.    <u>Class Five:</u> In complete satisfaction, discharge, and release, the Class Five Claim

shall be treated as a General Unsecured Claim and accorded the treatment of the General

Unsecured Claims in Class Twenty-nine. Upon substantial completion of the Plan as evidenced

by this Chapter 11 case being administratively closed, the Class Five Claim shall release its lien

against the real property and improvements located at 2313 Glenmore Terrace, Rockville,

Maryland.

     6.    <u>Class Six:</u> In complete satisfaction, discharge, and release, the Class Six Claim

shall be place in the General Unsecured Claim in Class Twenty-nine and treated as such. Upon

substantial completion of the Plan as evidenced by this Chapter 11 case being administratively

closed, the Class Six Claim shall release its lien against the real property and improvements

located at 2313 Glenmore Terrace, Rockville, Maryland.

     7.    <u>Class Seven:</u> In complete satisfaction, discharge, and release, on the Effective

Date the Debtors shall execute a note and deed of trust to the Class Seven Claim (the "New Fort Lee Note") in the principal amount of two hundred seventy-five thousand dollars ($285,000.00). The New Fort Lee Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Fort Lee Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying some or all of the New Fort Lee Note. The Debtors shall commence making monthly payments of one thousand four hundred forty-four dollars and five cents ($1,444.05) on the Effective Date. The Debtors shall continue to make monthly payments to the Class Seven Claim pursuant to the New Fort Lee Note until the New Fort Lee Note is paid in full. Upon payment in full of the New Fort Lee Note the Class Seven Claim shall release its lien against the Fort Lee Property.

All amount over the principal amount of the New Fort Lee Note shall be treated as a deficiency claim and accorded the treatment of the General Unsecured Claims in Class Twenty-nine.

8.     <u>Class Eight</u>: In complete discharge, satisfaction, and release, the Debtors shall continue making monthly payments of two hundred twenty-seven dollars and fifty-six cents ($227.56) until such time as the Class Eight Claim is paid in full. The other terms of the prior modification shall be incorporated into the Debtors' plan. However, nothing in modified loan shall prohibit the Debtors from pre-paying some or all of the amounts owed to the Class Eight Claim. Upon payment in full, the Class Eight Claim shall release its lien on the Hortown property.

9.     <u>Class Nine</u>:  In complete satisfaction, release, and discharge, on the Effective

19

Date, Mr. Kalra shall execute a new note and deed of trust for the benefit of the Class Nine

Claim (the "New Water Mill Note") in the principal amount of approximately two hundred

twenty-five thousand three hundred sixteen dollars ($225,316.03) the New Water Mill Note shall

bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Water Mill Note shall contain other commercially reasonable terms.  However,

nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some or all of

the "New Water Mill Note.  Mr. Kalra shall commence making monthly payments of one

thousand one hundred forty-one dollars and sixty-four cents ($1,141.64) on the Effective Date.

Mr. Kalra shall continue to make monthly payments to the Class Nine Claim pursuant to the

"New Water Mill Note until the Class Nine Claim is paid in full.  Upon payment in full of the

"New Water Mill Note, the Class Nine Claim shall release its lien against the Walter Mill

Property.

10.    Class Ten: In complete satisfaction, discharge, and release, on the Effective Date

Mr. Kalra shall execute a new note and deed of trust (the "New Water Mill/BAC Note") for the

benefit of the Class Ten Claim in the principal amount of ninety thousand dollars ($90,000.00).

The New Water Mill/BAC Note shall bear an interest rate of four and one-half percent (4½%)

and be amortized of thirty (30) years.

The New Water Mill/BAC Note shall contain other commercially reasonable terms.

However, nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some

or all of the New Water Mill/BAC Note.  Mr. Kalra shall commence making monthly payments

of four hundred fifty-six dollars and two cents ($456.02) on the Effective Date. Mr. Kalra shall

continue to make monthly payments to the Class Ten Claim pursuant to the New Water

Mill/BAC Note until the Class 10 Claim is paid in full.  Upon payment in full of the New Water Mill/BAC Note, the Class Ten Claim shall release its lien against the Water Mill Property.

Any amounts claimed by the Class Ten Claim above the principal amount of the New Water Mill/BAC Note shall be a deficiency claim of the Class 10 Claim and treated as a General Unsecured Claim in Class Twenty-nine.

Class Eleven: In complete satisfaction, discharge, and release, on the Effective Date the Debtors shall execute a new note and deed of trust (the "New East Chester Note") for the benefit of the Class Eleven Claim in the principal amount of two hundred seventy-six thousand three hundred seventy-three dollars ($276,373.00).  The New East Chester Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New East Chester Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying some or all of the New East Chester Note.  The Debtor shall commence making monthly payments of one thousand four hundred dollars and thirty-four cents ($1,400.34) on the Effective Date.  The Debtors shall continue to make monthly payments to the Class Eleven Claim pursuant to the New East Chester Note until the New East Chester Note is paid in full.  Upon payment in full of the New East Chester Note, the Class Eleven Claim shall release its lien against the East Chester Property.

12.    Class Twelve: In complete satisfaction, discharge, and release, on the Effective Date, the Debtor will execute a new note and deed of trust (the "New Sunrise Court Note") for the benefit of the Class Twelve Claim in the principal amount of two hundred eighty-seven thousand seven hundred forty-eight dollars and seventy-five cents ($287,748.75).  The New

Sunrise Court Note shall bear an interest rate of four and one half percent (4½%) and be amortized of thirty (30) years.

The New Sunrise Court Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying some or all of the New Sunrise Court Note. The Debtors shall commence making monthly payments of one thousand four hundred fifty-seven dollars and eighty-eight cents ($1,457.88) on the Effective Date. The Debtors shall continue to make monthly payments to the Class Twelve Claim pursuant to the New Sunrise Court Note until the New Sunrise Court Note is paid in full. Upon payment in full of the New Sunrise Court Note, the Class Twelve Claim shall release its lien against the Sunrise Court Property.

13.    Class Thirteen: In complete satisfaction, discharge, and release, the Debtors shall make payment in full of five thousand two hundred twenty-five dollars and seventy-two cents ($5,225.72) to the Class Thirteen Claim on the Effective Date. Upon payment in full, the Class Thirteen Claim shall release its lien against the Sunrise Court Property.

14.    Class Fourteen: In complete satisfaction, discharge, and release, on the Effective Date Mr. Kalra shall execute a new note and deed of trust (the "New Doc's Place Property Note") for the benefit of the Class Fourteen Claim with a principal amount of two hundred four thousand six hundred ninety-two dollars and thirty-five cents ($204,692.35). The Doc's Place Property Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Doc's Place Property Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some

or all of the New Doc's Place Property Note.  Mr. Kalra shall commence making monthly

payments of one thousand thirty-seven dollars and fifteen cents ($1,037.15) on the Effective

Date. Mr. Kalra shall continue to make monthly payments to the Class Fourteen Claim pursuant

to the New  Doc's Place Property Note until the Class Fourteen Claim is  paid in full.  Upon

payment in full of the New Doc's Place Property Note, the Class Fourteen Claim shall release its

lien against the Doc's Place  Property.

15.     Class Fifteen: In complete satisfaction, discharge, and release, on the Effective

Date the Debtors shall execute a new note and deed of trust (the "New Brighten Street Note") for

the benefit of the Class Fifteen Claim with the principal amount of two hundred forty-five

thousand dollars ($245,000.00).   The New Brighten Street Note shall bear an interest rate of four

and one half percent (4½%) and be amortized of thirty (30) years.

The New Brighten Street Note shall contain other commercially reasonable terms.

However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying

some or all of the New Brighten Street Note.  The Debtors shall commence making monthly

payments of one thousand two hundred forty-one dollars and thirty-eight cents ($1,241.38) on the

Effective Date.  The Debtors shall continue to make monthly payments to the Class Fifteen

Claim pursuant to the New Brighten Street Note until the New Brighten Street Note is paid in

full.  Upon payment in full of the New Brighten Street Note, the Class Fifteen Claim shall release

its lien against the Brighten Street Property.

16.     Class Sixteen: In complete satisfaction, discharge, and release, the Class 16 claim

shall be treated as a General Unsecured Claim and placed into Class Twenty-nine. Upon

substantial completion of the Plan as evidenced by this Chapter 11 case being administratively

closed, the Class Sixteen Claim shall release its lien against the Brighten Street Property.

17.    Class Seventeen: In complete satisfaction, discharge, and release, the Class Seventeen claim shall be treated as a General Unsecured Claim and placed into Class Twenty-nine.  Upon substantial completion of the Plan as evidenced by this Chapter 11 case being administratively closed, the Class Seventeen Claim shall release its lien against the Brighten Street Property.

18.    Class Eighteen: complete discharge, satisfaction, and release, on the Effective Date, Ms. Kalra shall execute a new note and deed of trust (the "New Oliver Drive Note") for the benefit of the Class Eighteen Claim with the principal amount of two hundred forty-five thousand dollars ($245,000.00).  The New Oliver Drive Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.  The New Oliver Drive Note shall contain other commercially reasonable terms.  However, nothing in the new note or deed of trust shall prohibit Ms. Kalra from pre-paying some or all of the New Oliver Drive Note. Ms. Kalra shall commence making monthly payments of one thousand two hundred forty-one dollars and thirty-eight cents ($1,241.38) on the Effective Date. Ms. Kalra shall continue to make monthly payments to the Class Eighteen Claim pursuant to the New Oliver Drive Note until the New  Oliver Drive Note is paid in full.  Upon payment in full of the New Oliver Drive Note, the Class Eighteen Claim shall release its lien against the Oliver Drive Property.

Any amounts over the amount of the New Oliver Drive Note principal shall be a deficiency  claim and treated as a General Unsecured Claim and placed in Class Twenty-nine

19.    Class Nineteen: In complete discharge, satisfaction, and release, on the Effective Date, Ms. Kalra shall execute a new note and deed of trust (the "New Lord Baltimore Note) for

the benefit of the Class Nineteen Claim with the principal amount of four hundred thirty-four thousand four hundred eighty-six dollars ($434,486.59). The New Lord Baltimore Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Lord Baltimore Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit Ms. Kalra from pre-paying some or all of the New Lord Baltimore Note. Ms. Kalra shall commence making monthly payments of two thousand two hundred one dollars and forty-cents ($2,201.48) on the Effective Date. Ms. Kalra shall continue to make monthly payments to the Class Nineteen Claim pursuant to the New Lord Baltimore Note until the Class Eighteen Claim is paid in full. Upon payment in full of the New Lord Baltimore Note, the Class Eighteen Claim shall release its lien against the Lord Baltimore Property.

20.     Class Twenty: In complete satisfaction, discharge, and release, the Debtors shall make payment in full of two thousand sixty-four dollars and eighty-eight cents ($2,064.88) to the Class Twenty Claim on the Effective Date. Upon payment in full, the Class Twenty Claim shall release its lien against the Lord Baltimore Property.

21.     Class Twenty-one: In complete discharge, satisfaction, and release, on the Effective Date, Mr. Kalra shall execute a new note and deed of trust (the "New Pine Run Note") for the benefit of the Class Twenty-one Claim with the principal amount of one hundred seventy-five thousand dollars ($175,000.00). The New Lord Baltimore Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Pine Run Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some or all of

the New Pine Run Note. Mr. Kalra shall commence making monthly payments of eight hundred eighty-six dollars and seventy-eight cents ($886.70) on the Effective Date. Mr. Kalra shall continue to make monthly payments to the Class Twenty-one Claim pursuant to the New Pine Run Note until the Class twenty-one Claim is paid in full.  Upon payment in full of the New Pine Run  Note, the Class Twenty-one Claim shall release its lien against the Pine Run Property.

Any amounts over the amount of the new principal amount of the New Pine Run Note shall be a deficiency claim and treated as a General Unsecured Claim and placed in Class Twenty-nine.

22.    Class Twenty-two: In complete satisfaction, discharge, and release, on the Effective Date, Mr. Kalra shall execute a new note and deed of trust (the New 4119 Captain's Corridor Note) for the benefit of the Class Twenty-two Claim with the principal amount of one hundred seventy-five thousand dollars ($175,000.00).  The New 4119 Captain's Corridor Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New 4119 Captain's Corridor Note shall contain other commercially reasonable terms.  However, nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some or all of the New 4119 Captain's Corridor Note. Mr. Kalra shall commence making monthly payments of eight hundred eighty-six dollars and seventy-cents ($886.70) on the Effective Date. Mr. Kalra shall continue to make monthly payments to the Class Twenty-two Claim pursuant to the New 4119 Captain's Corridor Note until the New 4119 Captain's Corridor Note is paid in full.  Upon payment in full of the New 4119 Captain's Corridor Note, the Class Twenty-two Claim shall release its lien against the 4119 Captain Corridor Property.

26

Any amounts over the amount of the new principal amount of the New 4119 Captain's Corridor Note shall be a deficiency claim and treated as a General Unsecured Claim and placed in Class Twenty-nine

23.    Class Twenty-three: In complete satisfaction, discharge, and release, the Class Twenty-one Claim shall be placed in the General Unsecured Claims in Class Twenty-nine and treated as such.  Upon substantial completion of the Plan as evidenced by this Chapter 11 case being administratively closed, the Class Twenty-three Claim shall release its lien against the 4119 Captain Corridor Property.

24.    Class Twenty-four: In complete satisfaction, discharge, and release, on the Effective Date, the Debtors shall execute a new note and deed of trust (the "New Janice Court Note") for the benefit of the Class Twenty-four Claim with the principal amount of three hundred seventy-five thousand five hundred sixty-five dollars and twenty-four cents ($375,565.24).   The New Janice Court Note shall bear an interest rate of four and one-half percent (4½%) and be amortized of thirty (30) years.

The New Janice Court shall contain other commercially reasonable terms.  However, nothing in the new note or deed of trust shall prohibit the Debtors from pre-paying some or all of the New Janice Court Note.  The Debtors shall commence making monthly payments of one thousand nine hundred two dollars and ninety-three cents ($1,902.93) on the Effective Date. They shall continue to make monthly payments to the Class Twenty-four Claim pursuant to the New Janice Court Note until the New Janice Court Note is paid in full.  Upon payment in full of the New Janice Court Note, the Class Twenty-four Claim shall release its lien against the Janice Court Property.

25.    <u>Class Twenty-five:</u> In complete satisfaction, discharge, and release, on the Effective Date Ms. Kalra shall execute a new note and deed of trust (the "New Carter Lane Note") for the benefit of the Class Twenty-five Claim in the principal amount of two hundred eighty-five thousand dollars ($285,000.00).  The New Carter Lane Note shall bear an interest rate of four and one half percent (4½%) and be amortized of thirty (30) years.

The New Carter Lane Note shall contain other commercially reasonable terms.  However, nothing in the new note or deed of trust shall prohibit Ms. Kalra from pre-paying some or all of the New Carter Lane Note.  Ms. Kalra shall commence making monthly payments of one thousand four hundred forty-four dollars and five cents ($1,444.05) on the Effective Date. Ms. Kalra shall continue to make monthly payments to the Class Twenty-five Claim pursuant to the New Carter Lane Note until the New Carter Lane Note matures, or otherwise is paid in full. Upon payment in full of the New Cater Lane Note, the Class Twenty-five Claim shall release its lien against the Cater Lane  Property.

Any amounts owed to the Class Twenty-five Claim above the principal amount of New Bank of America Note shall be a deficiency claim and shall be a General Unsecured Claim in Class Twenty-nine, receiving the same treatment as all other Class Twenty-nine Claims.

26.    <u>Class Twenty-six:</u> In complete satisfaction, discharge, and release, the Class Twenty-four Claim shall be placed in the General Unsecured Claims in Class Twenty-nine and treated as such.  Upon substantial completion of the Plan as evidenced by this Chapter 11 case being administratively closed, the Class Twenty-six Claim shall release its lien against the Carter Lane Property.

27.    <u>Class Twenty-seven:</u> In complete satisfaction, discharge, and release, on the

28

Effective Date Mr. Kalra shall execute a new note and deed of trust (the "New 4170 Captains Corridor Note") for the benefit of the Class Twenty-seven Claim in the principal amount of one hundred seventy-five dollars ($175,000.00). The New 4170 Captains Corridor Note shall bear an interest rate of four and one half percent (4½%) and be amortized of thirty (30) years.

The New 4170 Captains Corridor Note shall contain other commercially reasonable terms. However, nothing in the new note or deed of trust shall prohibit Mr. Kalra from pre-paying some or all of the New 4170 Captains Corridor Note . Mr. Kalra shall commence making monthly payments of eight hundred eighty-six dollars and seventy cents ($886.70) on the Effective Date. Mr. Kalra shall continue to make monthly payments to the Class Twenty-five Claim pursuant to the New 4170 Captains Corridor Note until the New 4170 Captains Corridor Note matures, or otherwise is paid in full. Upon payment in full of the New 4170 Captains Corridor Note , the Class Twenty-five Claim shall release its lien against the 4170 Captain Corridor Property.

Any amounts owed to the Class Twenty-five Claim above the principal amount of New 4170 Captains Corridor Note shall be a deficiency claim and shall be a General Unsecured Claim in Class Twenty-nine, receiving the same treatment as all other Class Twenty-nine Claims.

28.    Class Twenty-eight: In complete satisfaction, discharge, and release, the Class Twenty-eight Claim shall be placed in the General Unsecured Claims in Class Twenty-nine and treated as such. Upon substantial completion of the Plan as evidenced by this Chapter 11 case being administratively closed, the Class Twenty-eight Claim shall release its lien against the 4170 Captains Corridor property.

29.    Class Twenty-nine: In complete satisfaction, discharge, and release, the Debtors

shall make quarterly payments in the amount of five thousand seven hundred fifty dollars ($5,750.00) on a *pro rata* basis for five (5) years beginning on the Effective Date.  Total payments to the Class Twenty-nine Claims shall be one hundred fifteen thousand dollars ($115,000.00).  This represents a return of approximately twelve percent (12%) to the Class Twenty-nine Claims.

    30.    <u>Claims and Interests Not Classified</u>

    <u>Administrative Claims</u>: The Debtors have not designated any Class of Claims under §§ 507(a)(1), 507(a)(2), or 507(a)(8) pursuant to §1123(a)(1) of the Bankruptcy Code.  The Plan contemplates that Allowed Administrative Claims for professional fees, as allowed by the Bankruptcy Court, shall be paid in full on the Effective Date of the Plan, unless otherwise agreed by the Claimants.  The Debtor is aware of several Administrative Claims.  Debtor's counsel, the Law Offices of Richard B. Rosenblatt, PC. has an Administrative Claim in the approximate amount of thirty-five thousand dollars ($35,000.00).  Additionally, Sussex County, Delaware is owed approximately two thousand six hundred seventy-eight dollars ($2,678.00) in unpaid post-petition water/sewer bills on the Debtors' nine (9) Delaware properties.  Additionally,   approximately one thousand fifty dollars ($1,050.00) is owed in town property taxes for the Lord Baltimore, Doc's Place, and Brighton Court properties.

    The Debtors owe approximately eight thousand dollars ($8,000.00) in post-petition home owner association dues for the following properties  1) Sunrise Court; 2) Lord Baltimore; 3) Brighton Court; 4) 2304 Glenmore Terrace; and 5) 2313 Glenmore Terrace. There are post-petition real property taxes owed on four of the Debtors' properties: 1) Brighton Road; 2) Lord Baltimore; 3) 2304 Glenmore; and 4) Oliver Drive.  This post-petition tax liability totals

approximately six thousand five hundred dollars ($6,500.00).

Finally, the Debtors estimate that they will owe approximately one thousand dollars ($1,000.00) for taxes for tax year 2009.  The Debtors are in the process of preparing and filing the return, which was under an extension.

Administrative Claims consisting of ordinary operating expenses incurred by the Debtor in possession in the ordinary course of business shall be paid in accordance with the terms and conditions of any agreements relating thereto.

Priority Tax Claims: Priority Tax Claims are unsecured claims of governmental units for taxes that are entitled to priority in accordance with § 507(a)(8) of the Bankruptcy Code. At this time there are no Priority Tax Claims.

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF PLAN

The Plan will be funded by continued operation of the Debtors' real estate business and their income.  The Debtors will continue to own and lease approximately fifteen (15) properties. They have been able to able to evict several non-paying tenants and replace them with tenants that are more financial secure and able to pay the rent.   The Plan calls for the significant reduction of loan principal on a large number of the properties, thereby reducing the Debtors overall debt load and enabling the rental payments to cover the mortgages for most properties. Any shortfalls can low be made up by the Debtors' salaries.

Ms. Kalra is employed by NIH and earns an annual net salary of approximately sixty-one thousand dollars ($61,000.00).  Mr. Kalra is currently employed by Bechtel as an engineer earning approximately five thousand three hundred sixty-five dollars ($5,365.86) a month after

taxes.[2]  He also receives social security and a pension.  Projections for ~~2010~~ 2011 and the five (5) ~~three (3)~~ year period following confirmation are attached to the Disclosure Statement as **Exhibit A**.  The Debtors' financial projections assume a steady stream of rental income for ~~2010~~ 2011 and beyond.  Based upon those projections, the Debtors will be able to make the payments under the Plan.

### ARTICLE V
### EXECUTORY CONTRACTS AND LEASES

The Debtors are landlords  is not party to any non-residential leases or any executory contracts.

### ARTICLE VI
### MODIFICATION OF THE PLAN

The Debtors reserve the right in accordance with the Code to amend and modify the Plan prior to the Confirmation Date.  After the Confirmation Date, the Debtors may, upon order of the Court, in accordance with Code § 1127(b), remedy any defects or omissions or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

### ARTICLE VII
### GENERAL PROVISIONS

A.    **Effect of Confirmation**

1.    On the Confirmation Date, all property of the bankruptcy estate not otherwise specifically treated under this Plan shall become the Debtors' property.

2.    Upon entry of the order of the Court confirming the Plain, all prior Orders

---

[2] Mr. Kalra intends to slowly cut back on his hours.  The projections attached to the Disclosure statement provide for this.

of the Court are superceded by the order of confirmation.

        3.      Upon entry of the order of the Court confirming the Plan, the provisions of the Plan bind the Debtor, any entity acquiring property under the Plan and any Claimant, whether or not the claim or interest of such Claimant is impaired under the Plan, and whether or not such Claimant has accepted the Plan.

        4.      Upon entry of the order of the Court confirming the Plan, the following are avoided under this Plan:  any liens arising out of or in connection with judgment liens, or any other judicial liens against the Debtors, the Debtors' property or property of the estate, including liens in favor of any Claimants not contemplated by this Plan.  Lien creditors holding such avoided claims shall execute, and otherwise cooperate to effect, any releases reasonably required by the Debtor to obtain releases of such claims.

        5.      Upon entry of the order of the Court confirming the Plan, all Claimants are enjoined from taking action against any guarantors of the debts of the Debtors so long as the Debtors are not in material default of their obligations under the Plan and so long as the Debtors have not made any fraudulent transfers of the Debtors' property.

        6.      Upon entry of order of the Court confirming the Plan, all Claimholders shall cooperate with the Debtors to effectuate the implementation of the Plan, including assisting in the execution of any documents required by the terms of the Plan and releasing any liens against the Debtors' property.

**B.**      <u>**Determination of Claims.**</u>

        The Debtors reserve the right to seek the estimation of any contingent claim, including claims arising from any guarantees executed by the Debtors.

33

C.    **Distribution Procedures.**

      1.    If any claim is the subject of an objection filed with the Court, any payments to be made to the holder on account of such claim shall be withheld and reserved until such time as the objection is resolved by settlement or a final and unappealable order of the Court is entered.

      2.    The Debtors shall stop payment on any distribution check that is not cleared through the account upon which such check is drawn within ninety days of the date of distribution. Distribution checks shall be mailed to the addresses given in proofs of claim filed herein, or, as to those Claimants who did not file a proof of claim, to the addresses listed in the Debtors' Schedules, unless the Debtors receives other instructions in writing from such Claimant(s). All funds which are not distributed as a result of stopped checks shall be distributed to the remaining holders of Allowed Claims. It shall be the obligation of each Claimant to provide written notice to the Debtors of any change of the Claimant's address.

      3.    If any party in interest holding any Allowed Claim fails to receive a payment as provided under the Plan, or if any party in interest questions the Debtors' compliance with the Plan in any way, such party shall give the Debtors written notice thereof, and the Debtors may cure such non-compliance within sixty (60)days of such notice.

D.    **Notice to Debtors.**

      1.    Any notice to the Debtors must be in writing.

      2.    Any notice sent by facsimile will be deemed to have been given when received, and if mailed, will be deemed to have been given three days after the date sent by registered or certified first-class mail, postage prepaid to: Mary and Balbir Kalra, 2304 Glenmore Terrace,

Rockville, Maryland 20850 , and to Richard B. Rosenblatt, Esquire, The Law Offices of Richard B.

Rosenblatt, PC, 30 Courthouse Square, Suite 302, Rockville, Maryland 20850.

**E.     Waiver of Certain Fees**.

        All holders of Allowed Claims, whether such claims are secured, unsecured or

priority in nature, waive all penalties, default interest and/or late fees that may have accrued on their

claims.

**F.     Professional Fees and Expenses.**

        All fees for services rendered and expenses incurred after the Confirmation Date by

professionals engaged by the Debtors shall be paid by the Debtors in the ordinary course of business

without the necessity of filing fee applications or seeking approval of the Court.

**G.     U.S. Trustee Fees**.

        1.     Current Fees The Debtors shall pay in full, within thirty (30) days after the

Effective Date, all fees owing to the United States Trustee through the Effective Date.

        2.     Post Confirmation Trustee Fees.  Until such time as the Chapter 11 Case is

closed, dismissed, or converted to one under chapter 7 of the Bankruptcy Code, the Debtors shall

report its disbursements for each calendar quarter to the United States Trustee and shall timely pay all

fees set forth in 28 U.S.C. § 1930.  For the purposes of this provision, disbursement includes all

expenditures made by the Debtors, whether pursuant to this Chapter 11 Plan or otherwise.

**H.     Claims**.

        1.     Notwithstanding confirmation of the Plan, the Debtors shall retain the

right to dispute the validity, priority, extent and amount of any alleged security claim or security

interest, whether or not addressed specifically in the Plan except for such secured claims that

have been resolved with Court approval prior to the Confirmation Date.

2.    The Debtors shall retain the right to litigate and/or dispute the extent and validity of the claims of any creditors, except as may be provided in the Plan.

3.    Failure of the Debtors to object or to examine any claims shall not be deemed a waiver of the Debtors' right to object to or re-examine the claim in whole or in part.

**I.    <u>Rights of Action</u>**.

On or after the date the Plan is confirmed, the Debtors will retain the exclusive right to enforce any present or future claims or causes of action that arose before or after this case was commenced, including, but not limited to, avoiding powers, suits and proceedings arising under §§ 544, 545, 547, 548, 549, 550 and 553 of the Code.  Such causes of action must be brought by June 22, 2011.  At this time, the Debtors do not believe that any such causes of action exist.

**ARTICLE VIII**
**<u>DISCHARGE</u>**

Upon complying with, ~~and~~ satisfying the terms, and completing all payments required to be made ~~provided~~ herein, and except as provided in this Plan or in a final order determining that a debt is not dischargeable, the Debtors are discharged from all claims that arose before the Confirmation Date, and any debt of a kind specified in Code sections 502(g), 502(h) or 502(i), whether or not (a) a proof of claim based on such debt is filed or deemed filed under Code section 501, (b) such claim is allowed under Code section 502, or (c) the holder has accepted the Plan.  Additionally, the Debtors make seek, after notice and a hearing, entry of their discharge prior to completing all payments as provided for in § 1141(a)(5)(B) of the Code.

**ARTICLE IX**

36

## CONFIRMATION PROCESS

The Debtors urge all Claimants to cooperate in the confirmation and implementation of the Plan by casting and returning a ballot accepting the Plan. Under the Bankruptcy Code, one of the requirements for confirmation of the Plan is that the Plan must be accepted by each Class of Claims and Interests that is impaired. All Classes of Claims are impaired under the Plan. The Bankruptcy Code provides that a Class of Claims has accepted the Plan if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class that vote on the Plan. If all of the requirements for confirmation of the Plan are satisfied, other than the acceptance of the Plan by a particular class, the Court can, upon the Debtors' request, nonetheless confirm the Plan, with respect to that Class, if the Plan does not unfairly discriminate and is fair and equitable within the meaning of the Code.

The Bankruptcy Code provides that a Class of Claims that is not impaired is conclusively presumed to accept the Plan, and that solicitation of acceptances from holders of such Claims is not required.

A holder of a Claim who wishes to exercise the right to vote to accept or reject the Plan must file, within the time prescribed by the Court, an official ballot in the form accompanying this Disclosure Statement. A ballot is filed by returning it to the Debtors' undersigned counsel at the following address:

> Attn. Richard B. Rosenblatt, Esquire
> The Law Offices of Richard B. Rosenblatt, PC
> 30 Courthouse Square, Suite 302
> Rockville, Maryland 20850

## ARTICLE X
## RETENTION OF JURISDICTION

The Court will retain jurisdiction for the following purposes until such time as the Debtors' obligations under the Plan are fully discharged and the Court enters the final order terminating the Debtors' Chapter 11 case:

A.      Classification of a Claim and the re-examination of a Claim which may have been allowed for the purposes of voting and determination of such objections as may be filed to Claims (including liquidating or estimating any disputed Claims).  The failure by the Debtors to object to, or to examine any Claims for the purposes of voting, will not be deemed to be a waiver of the Debtors' rights to object to or re-examine the Claims in whole or in part.

B.      Determination of all questions and disputes regarding title to the assets of the Debtors, the determination of causes of action, preferences, controversies, disputes or conflicts, whether or not subject to an action pending as of the Confirmation Date between the Debtors and any other party.

C.      Correction of any defect, curing of any omission or the reconciliation of any inconsistencies of the Plan, or in the order of confirmation, as may be necessary to carry out the purposes and intent of the Plan.

D.      Enforcement and interpretation of the terms and conditions of the Plan.

E.      Entry of an order including injunctive relief necessary to enforce the rights, title, interest and powers of the Debtors and imposition of such limitations to, restrictions on, or terms and conditions of such rights, title, interest and powers as the Court may deem necessary.

F.      Entry of an order terminating this case upon the completion of the Plan.

G.      Such other purposes as the Court deems necessary and reasonable to carry out the intent and purposes of the Plan.

Dated: ~~September 1, 2010~~                    **Mary and Balbir Kalra**
December 20, 2010


\s\ Mary Kalra
Mary Kalra

\s\ Balbir Kalra
Balbir Kalra


Respectfully submitted,


/s/ Richard B. Rosenblatt
Richard B. Rosenblatt, Esquire
The Law Offices of Richard B. Rosenblatt, PC
30 Courthouse Square, Suite 302
Rockville, MD 20850
(301) 838-0098

*Counsel for Mary and Balbir Kalra*